**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>WALL007 LLC, et al.,<br><br>Alleged Debtors. | Chapter 7<br><br>Case No. 20-31135 (HDH)<br>(Jointly Administered) |

**REPLY TO RESPONSE AND OBJECTION TO AMENDED MOTION OF PETITIONING CREDITORS FOR (i) RECONSIDERATION OF ORDER DISMISSING INVOLUNTARY BANKRUPTCY CASES WITHOUT PREJUDICE AND (ii) RELATED RELIEF**

**NGUYEN & CHEN LLP**

Brian M. Gargano
State Bar No. 24102898
bgargano@nguyen-chen.com
Jiangang Ou
State Bar No. 5451133NY
jou@nguyen-chen.com
11200 Westheimer Road, Suite 120
Houston, Texas 77042
Tel: (832) 767-0339
Fax: (832) 767-0669

*Counsel for Petitioning Creditors*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... 3

INTRODUCTION .......... 5

BACKGROUND .......... 5

ARGUMENT .......... 6

1. Alleged Debtors' argument urging denial of the Motion because of Federal Rule of Civil Procedure 59(e) is irrelevant .......... 6

2. Alleged Debtors did not even offer a scintilla of evidence in support of their factual claims. .......... 7

3. The Motion is warranted because the Court's dismissal order is no longer equitable, and justice demands reconsideration and vacatur. .......... 11

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

CASES

*Agostini v. Felton*, 521 U.S. 203 (1997) .......... 12
*Buck v. Davis*, 137 S. Ct. 759 (2017) .......... 12
*Carter v. Fenner*, 136 F.3d 1000 (5th Cir. 1998) .......... 12
*Horne v. Flores*, 557 U.S. 433 (2009) .......... 11
*In re Blutrich Herman & Miller*, 227 B.R. 53 (Bankr. S.D.N.Y. 1998) .......... 6
*In re McDonald*, No. 01-44712-BJH-13, 2002 Bankr. LEXIS 1973 (Bankr. N.D. Tex. Mar. 7, 2002) .......... 6
*In re Racing Servs.*, 571 F.3d 729 (8th Cir. 2009) .......... 12
*In re Woods*, 173 F.3d 770 (10th Cir. 1999) .......... 12
*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988) .......... 12
*Miller v. Mays*, 879 F.3d 691 (6th Cir. 2018) .......... 12
*Pershing Pac. W., LLC v. Ferretti Grp., USA, Inc.*, No. 10-cv-1345-L(DHB), 2012 U.S. Dist. LEXIS 49610 (S.D. Cal. Apr. 3, 2012) .......... 9
*Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992) .......... 12
*Salazar v. District of Columbia*, 896 F.3d 489 (D.C. Cir. 2018) .......... 12
*Ungar v. Palestine Liberation Org.*, 599 F.3d 79 (1st Cir. 2010) .......... 12
*United Airlines, Inc. v. Brien*, 588 F.3d 158 (2d Cir. 2009) .......... 12

STATUTES

FED. R. CIV. P. 59(e) .......... 6
FED. R. CIV. P. 60(b) .......... 6

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>WALL007 LLC, et al.,[1]<br><br>Alleged Debtors. | Chapter 7<br><br>Case No. 20-31135 (HDH)<br>(Jointly Administered) |

**BRIEF OF REPLY TO RESPONSE AND OBJECTION TO AMENDED MOTION OF PETITIONING CREDITORS FOR (i) RECONSIDERATION OF ORDER DISMISSING INVOLUNTARY BANKRUPTCY CASES WITHOUT PREJUDICE AND (ii) RELATED RELIEF**

Petitioning Creditors Jun Li, Yunding Kang, Cunxiang Ji, Jin Wang, Peng Guo, Lin Zhou, Qu Zhou, Kai Tian, Yijing Wu, Xuegeng Gong, Weijia Kong, Heng Zhang, Hong Guo, Pei Guan, Yue Xu, Mai Ye, Chenchen Jiang, Qiuying Li, Ruinian Wu, Liying Yang, Yan Zhang, Wenjun Wang, Ying Zhou, Lin Li, Li Jiang, Rufeng Dai, Cunxiang Ji, Lin Gao, Qiao Qin, Yue Zhang, Xiaodong Hao, Weisi Wang, Xiaoquan Dai, Feng Yan, Ou Jiang, Jinzhe Wu, Yadan Liu, Wenjuan Yin, Yi Tang, Ying Zhang, Pengfei Dong, Kangying Mao, Qin Chu, Yulan Chen, Sicheng Zhan, Jinqiu Tang, Di Tang, Jun Zeng, Kui Wang, Jun Wang, Xiaomin Fan, Jialin Hu, Jiaxiang Lu, Fuqing Chen, Hanjiang Fu, Aiguo Luo, Fang Ding, Xiangdong Zhu, Wai Ying, Yuan Yuan, Chao Xu, Guoqin Zhou, and Qu Chen ("Petitioning Creditors") ask the Court to grant their amended motion for reconsideration including related relief [Docket No. 325] (the "Motion"). In support of the Motion, Petitioning Creditors respectfully submit this reply to Alleged Debtors' response and objection [Docket No. 331] (the "Response").

[1] The Alleged Debtors in this jointly administered case are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC ("Alleged Debtors"). Currently, Alleged Debtors' federal tax identification numbers are unknown to Petitioning Creditors.

## INTRODUCTION

The Response filed by Alleged Debtors (1) discusses irrelevant law, (2) does not proffer any competent evidence or proof in support of their factual allegations, and (3) does not provide a tenable legal basis warranting denial of the Motion. For these reasons, the Court should grant the Motion.

## BACKGROUND

On December 7, 2020, the Court *sua sponte* issued an Order Dismissing Involuntary Bankruptcy Cases Without Prejudice. [Docket No. 310]. In the Dismissal Order, the Court misapprehended Petitioning Creditors' intention as to the language set forth in the Live Deposition Agreement. In addition to their justifiable concern for their health and safety and that of their families given that COVID-19 has claimed more than 400,000 lives, the concern Petitioning Creditors attempted to express in the Live Deposition Agreement was their fear as to the consequences if circumstances beyond their control prevented them from fully complying with the Agreement. As such, the Petitioning Creditors wished the Court had permitted them an opportunity to address and cure the Court's concerns before the Court's issuance of its dismissal order as Petitioning Creditors did not intend to disobey and did not reasonably believe they were disobeying the Court's Orders when they filed the Agreement.

While it appears the Court's dismissal was merely technical and intended to serve as an abatement of the proceedings until "[Petitioners] are more comfortable traveling to the United States in the future to prosecute their case"[2] the Alleged Debtors saw it as a loophole to "cash in" and receive a windfall to further compound the harm that Alleged Debtors have already caused to the Petitioning Creditors. As such, on December 17, 2020, Alleged Debtors filed the motion

[2] *See* [Docket No. 310].

seeking an award for attorneys' fees, costs, compensatory damages, and punitive damages against Petitioning Creditors in the absurd amount of **$138,671,477.76**. [Docket No. 313]. As a result, the Court's technical dismissal has resulted in unintended consequences as Petitioning Creditors who have already been defrauded by Alleged Debtors for tens of millions of dollars, now face the highly inequitable prospect of having to pay Alleged Debtors alleged fees, costs, and damages. Indeed, Alleged Debtors do not and cannot dispute that they did not pay back the loans given by Petitioning Creditors, totaling approximately $30 million. As bankruptcy courts are courts of equity, this Court has the inherent power "to reconsider, modify or vacate previously-entered orders." *See In re McDonald*, No. 01-44712-BJH-13, 2002 Bankr. LEXIS 1973, at * 4 (Bankr. N.D. Tex. Mar. 7, 2002) (citing *In re Blutrich Herman & Miller*, 227 B.R. 53 (Bankr. S.D.N.Y. 1998) (vacating, *sua sponte*, an order for relief in an involuntary case where service of the petition was improper)).

Accordingly, this Court under its inherent equitable power and/or under FED. R. CIV. P. 60(b) should vacate its Dismissal Order and permit Petitioning Creditors to submit an Amended Live Deposition Agreement that is acceptable by the Court.

## ARGUMENT

### 1. Alleged Debtors' argument urging denial of the Motion because of Federal Rule of Civil Procedure 59(e) is irrelevant.

Petitioning Creditors seek the relief requested in the Motion under Federal Rule of Civil Procedure 60(b)—not Rule 59(e). [Docket 325 p. 11]. The two rules are different and clearly present different procedural and substantive requirements. *Compare* FED. R. CIV. P. 60(b) *with* 59(e). Thus, Alleged Debtors' analysis under Rule 59(e) is irrelevant and should not be considered.

**2. Alleged Debtors did not even offer a scintilla of evidence in support of their factual claims.**

In the Response, Alleged Debtors specifically claim "upon information and belief" that counsel for Petitioning Creditors

> did not have a reasonable belief that the Live Deposition Agreement as filed was "sufficient and in compliance with the Court's Order" since such Order never mentioned any permission to so severely condition that Agreement as to allow the Petitioners to avoid their obligation to appear in the United States for deposition. During the four (4) months the Petitioners' counsel was aware of the Court's straightforward requirement for a signed and filed Live Deposition Agreement, it never requested, let alone mentioned, any such conditions prior to the eleventh-hour filing of its "Agreement." The intent of the Petitioners was clear, namely that they would only agree to possibly appear.

[Docket No. 331 ¶ 18].

Alleged Debtors provide no "information" to back up this claim because none exists. In short, their "belief" is solely comprised of self-serving speculation and mere innuendo designed to avoid having this case resolved on the merits. Alleged Debtors brazenly mischaracterize to the Court Petitioning Creditors' argument; namely, that they (like everyone else around the globe) faced obstacles and impediments due to COVID-19. In particular, and directly impacting Petitioning Creditors was the Trump Administration's travel ban[3] in which the Petitioning Creditors were prohibited **<u>from traveling directly</u>** from China to the United States and appearing for live depositions.[4]

---

[3] *See* https://www.nafsa.org/regulatory-information/covid-19-restrictions-us-visas-and-entry and https://www.federalregister.gov/documents/2020/02/05/2020-02424/suspension-of-entry-as-immigrants-and-nonimmigrants-of-persons-who-pose-a-risk-of-transmitting-2019 (People other than U.S. citizens, permanent residents, and their immediate family were prohibited from entering the U.S. within 14 days of being in China).

[4] It is beyond dispute the travel ban made it much costlier and more difficult for Chinese nationals to travel to the U.S. First, the Chinese national must have a valid passport and visa to travel to a country not on the banned list. Second, the Chinese national must bear the burden and cost of having to travel and reside for at least 14 days in quarantine before being allowed to travel to the U.S. Third, the Chinese national must then repeat the process in order to return to his/her home in China. Additionally, the travel ban is applicable to Europe as well.

Moreover, Alleged Debtors completely disregarded and downplayed the impact of the travel ban, claiming:

> Petitioners' counsel continues to assert that a "travel ban" imposed by the Trump Administration prohibits the Petitioners' travel to the United States. No such "travel ban" exists. The travel restrictions enumerated in the Presidential Proclamation dated January 31, 2020 specifically enumerate exceptions to the restrictions and discuss the manner in which travel may be permitted. The restrictions in that Presidential Proclamation made no distinction between direct travel or indirect travel to the United States. No Petitioner ever attempted to seek entry into the United States by either direct or indirect means or using any exception enumerated in the Presidential Proclamation [Docket No. 331 ¶ 17].

Indeed, Alleged Debtors' argument has missed the mark and ignores the tremendous difficulty, hardship, and coordination effort needed to carry out international travel plans as a result of the travel ban and COVID-19—not to mention the outstanding health risks involved with such travel. Contrary to Alleged Debtors' argument, these risks and hardships are not a "hoax" and clearly continue to impact and plague international travel to this day.

Similarly, Alleged Debtors have downplayed and minimized the welcome advancement and rollout of the COVID-19 vaccines by Pfizer and Moderna,[5] (with Johnson & Johnson's vaccine on the way). Unfortunately for Alleged Debtors, "merely stating something does not make it so." *Pershing Pac. W., LLC v. Ferretti Grp., USA, Inc.*, No. 10-cv-1345-L(DHB), 2012 U.S. Dist. LEXIS 49610, at *11 (S.D. Cal. Apr. 3, 2012). Indeed, circumstances have clearly changed since early December 2020 and the U.S. government is expected shortly to invoke the Defense Production Act in order to rapidly increase the supply of raw materials and equipment needed to produce vaccines.[6] Thus, Alleged Debtors cannot colorably claim that these events do not

[5] Pfizer's COVID-19 vaccine was approved by the FDA on December 11, 2020, ***four days*** after the entry of the Dismissal Orders and Moderna's vaccine was approved on December 18, 2020, ***eleven days*** after entry.

[6] *See* Jessie Hellmann, Biden to use DPA to boost production of COVID-19 tests, gloves, vaccine supplies, Feb. 5, 2021, 12:13 EST, https://thehill.com/policy/healthcare/537538-biden-to-use-dpa-to-boost-production-of-covid-19-tests-gloves-vaccine; and, Shannon Pettypiece, Biden Administration Boosting Vaccine Supply to States,

constitute a single changed circumstance that might relate to these proceedings which provide grounds for this Court to reconsider its past Orders. Nonetheless, Alleged Debtors have done just that despite not presenting to the Court a shred of evidence that the distribution and availability of the American vaccine supply to U.S. citizens would not make it markedly much safer for Petitioning Creditors to travel here.

Equally lacking in credibility is Alleged Debtors' misguided argument as to the impact or lack thereof of the U.S. vaccines on the distribution and availability of vaccines in the People's Republic of China. This argument simply ignores the fact that the risk and danger of infection is much higher in the U.S., which has one of the highest infection and death rates in the world. While inoculation in China would certainty help (although Alleged Debtors have offered no evidence whatsoever as to the availability or lack thereof of the vaccine in China), Petitioning Creditors would be traveling from China to the U.S. beginning this September at which time the risk of infection in the U.S. should be greatly diminished.

Alleged Debtors have also failed to present any evidence to the Court that allowing these cases to proceed could have serious consequences for the Alleged Debtors and third parties. Indeed, Alleged Debtors have not proffered a shred of evidence demonstrating that they are not mere shell companies and have and are actually engaged in business and routine operations.[7] Most tellingly, Alleged Debtors have not and cannot offer a shred of competent evidence refuting the

---

Community Health Centers, Feb. 9, 2021, 12:33 PM CST, https://www.nbcnews.com/politics/white-house/biden-administration-boosting-vaccine-supply-states-community-health-centers-n1257154.

[7] The Petitioning Creditors will show same to the Court if being allowed to proceed with the discovery upon the Alleged Debtors, though Alleged Debtors decisively and repeatedly refused to produce their books and records, specifically, financials (if any), to the Petitioning Creditors.

fact that they have no employees, no business operation, no revenue, no office space, little assets,[8] no additional lines of credit, and no general business affairs of note.

As Alleged Debtors have not and cannot demonstrate any prejudice to them if the Court vacates its dismissal order given they will have to defend on the merits anyway as the dismissal was without prejudice, Petitioning Creditors pray that the Court grants them the opportunity to file an Amended Live Deposition Agreement detailing the following with regard to the live depositions in the United States:

> **Given the fact that the vaccine will have been widely distributed in the U.S. by mid-summer 2021, Petitioners agree and commit to and shall appear in person in the United States for their live depositions starting in mid-September 2021 on mutually agreeable dates and times, and said depositions shall continue until the requisite depositions have been completed. The Petitioners shall immediately apply for all such travel documents as required by the applicable laws and regulations, should they not have them yet. In the event the visa processing departments of the U.S. Embassy in Beijing and General Consulates in other major cities China are still closed (which upon information and belief it still is as of this date), Petitioners shall apply for their travel visas as soon as practically possible when the visa processing departments reopen and begin processing travel visas to come to the U.S. To ensure compliance with the Amended Live Deposition Agreement, Petitioners' counsel shall provide the Court a monthly status report detailing the progress of the visa applications (including with an Excel spreadsheet showing the same) and shall alert the Court if any of the Petitioners travel documents become a problem. In the event a Petitioner has any problem out of their control that may prohibit them from traveling to the U.S., Petitioners' Counsel would respectfully ask the Court for guidance as to how to proceed in order to ensure complete compliance with the**

---

[8] Two of the seven Alleged Debtors, Wall007 LLC and Wall009 LLC, which were the first two entities kicking off the series of international borrowing activities, apparently purchased and owned certain property which were mortgaged to creditors other than the Petitioning Creditors. Based on the Petitioning Creditors investigation prior to the filing of these Involuntary Bankruptcy cases, five of the seven Alleged Debtors that received the loan in the total amount of approximately $30 million did not purchase any property as they warranted and represented when raising millions of dollars from these innocent overseas lenders who baselessly, wrongfully and regretfully believed that American business entities shall be trustworthy and everyone's lawful rights and legal claims would be better protected by the U.S. law and legal system than any other jurisdiction in the world.

**Court's Order and the Amended Live Deposition Agreement to avoid any prejudice to the Parties.**

Notably, Alleged Debtors do not dispute that the parameters of the proposed Amended Live Deposition Agreement are reasonable and alleviate the concerns the Court voiced in its dismissal order.[9] As such, it is beyond dispute that granting Petitioning Creditors' motion would benefit both Parties as Alleged Debtors will have the written assurance to conduct the live depositions of Petitioners, and the Petitioning Creditors will not be needlessly exposed to Alleged Debtors' unripe and unwarranted motion for fees, costs, and damages. Moreover, Petitioning Creditors will avoid having to needlessly re-file their Involuntary Bankruptcy Petitions, which would be costly and against the doctrine of judicial economy.[10]

**3. The Motion is warranted because the Court's dismissal order is no longer equitable, and justice demands reconsideration and vacatur.**

Applying the judgment prospectively is no longer equitable as the Court's technical dismissal has resulted in unintended consequences as Petitioning Creditors who have already been defrauded by Alleged Debtors for $30 million, now face the highly inequitable prospect of having to pay Alleged Debtors alleged fees, costs, and damages. While the Court's inherent equitable powers allow it to vacate the dismissal order, FRCP 60(b)(5) also provides the Court with a mechanism to address the inequity created by the dismissal order.[11] Moreover, even assuming

---

[9] Assuming Alleged Debtors are correct that the visa processing departments of the U.S. Embassy in Beijing and General Consulates are open in the major cities, Petitioning Creditors as previously stated shall apply for their travel visas as soon as possible, and that to ensure compliance with the Amended Live Deposition Agreement, Petitioners' counsel shall provide the Court a monthly status report detailing the progress of the visa applications (including with an Excel spreadsheet showing the same) and shall alert the Court if any of the Petitioners travel documents become a problem.

[10] It took Petitioning Creditors more than a half year to file the cases, effect service of process, and properly respond to Alleged Debtors' baseless motion to dismiss and ridiculous discovery requests. Notably, Petitioning Creditors answered more than 6,000 interrogatory questions and produced thousands of pages of documents in response to Alleged Debtors' request for production, though Alleged Debtors produced little.

[11] For example, it is appropriate to grant an FRCP 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show that a significant change in either the facts or the law renders the continued enforcement of an injunction or consent decree detrimental to the public interest. *Horne v. Flores*, 557 U.S. 433, 447 (2009); *see, e.g.,*

FRCP 60(b)(5) does not apply (which it does), FRCP 60(b)(6) is another mechanism to provide Petitioning Creditors' appropriate relief from the dismissal order. *See Miller v. Mays*, 879 F.3d 691, 698 (6th Cir. 2018). As FRCP 60(b)(6) is a catchall provision, bright-line rules for FRCP 60(b)(6) relief generally are not appropriate. *E.g., Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 84 (1st Cir. 2010) (no absolute bar to relief for party that willfully defaults and later seeks relief under FRCP 60(b)(6)); *see also In re Woods*, 173 F.3d 770, 780 (10th Cir. 1999) (FRCP 60(b)(6) has been described as a "grand reservoir of equitable power to do justice in a particular case"). In considering FRCP 60(b)(6), the Fifth Circuit requires the moving party to also show that it has a meritorious claim or defense and that the opposing party will not be unfairly prejudiced if the judgment is set aside. *See Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir. 1998). Here, Petitioning Creditors have shown the Court it has meritorious claims and that the opposing party will not be unfairly prejudiced if the dismissal order is set aside.

Additionally, in determining whether there are exceptional circumstances, the court may consider a wide range of factors, including the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process. *Buck v. Davis*, 137 S. Ct. 759, 778 (2017); *see United Airlines, Inc. v. Brien*, 588 F.3d 158, 175–76 (2d Cir. 2009) (potential hardship resulting from inconsistent judgments can constitute exceptional circumstances); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (when judicial action is taken in violation of 28 U.S.C. § 455(a), which is recusal statute, additional factor is risk that denial

---

*Agostini v. Felton*, 521 U.S. 203, 237 (1997) (based on significant changes in Establishment Clause law since entry of original injunction, petitioners were entitled to relief under FRCP 60(b)(5)); *In re Racing Servs.*, 571 F.3d 729, 732 (8th Cir. 2009) (after debtor's criminal convictions were reversed, bankruptcy court under FRCP 60(b)(5) properly vacated subordination order, which had allowed debtor's claim for rent but had subordinated it to all other claims, because criminal convictions had been critical to subordination order). Thus, any adjustments to the order should be tailored to the change in circumstances and should do no more than is necessary to resolve the problem created by the change in circumstances. *Salazar v. District of Columbia*, 896 F.3d 489, 498 (D.C. Cir. 2018); *see Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 391 (1992).

of relief will produce injustice in other cases). Here, the Court's technical dismissal has resulted in unintended consequences as Petitioning Creditors who have already been defrauded by Alleged Debtors for $30 million, now face the highly inequitable prospect of having to pay Alleged Debtors alleged fees, costs, and damages even though Alleged Debtors have not paid back even a fraction of the $30 million they took from Petitioning Creditors which they promised to pay Petitioning Creditors back.

In short, based on the change in circumstances and in the interests of justice, judicial economy, and to avoid prejudice to Petitioning Creditors (specifically the Alleged Debtors' unfounded motion under 11 U.S.C. 303(i) for recovery of damages in the amount of approximately $138,000.000.00 from the Petitioners, (see [Dkt. No. 313]), Petitioners respectfully request that the Court reconsider its Order Dismissing Involuntary Bankruptcy Cases Without Prejudice and vacate said Order.

## CONCLUSION

As the requested relief will both absolve the Court's concerns as to Petitioning Creditors appearing live for depositions and prevent unfair prejudice and manifest injustice to Petitioning Creditors, the Court should grant Petitioning Creditors' Motion for Reconsideration and vacate its dismissal order.

Dated: February 9, 2021

Respectfully submitted,

**NGUYEN & CHEN LLP**

/s/ *Brian M. Gargano*
Brian M. Gargano
State Bar No. 24102898
bgargano@nguyen-chen.com
Jiangang Ou
State Bar No. 5451133NY
jou@nguyen-chen.com
11200 Westheimer Road, Suite 120
Houston, Texas 77042
Tel: (832) 767-0339
Fax: (832) 767-0669

*Counsel for Petitioning Creditors*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above instrument was served on the date the instrument was electronically filed. Service has been accomplished electronically and/or by first-class mail to the parties listed below.

**Via U.S. Mail**
WALL007, LLC
13901 Midway Road, Suite 102
Dallas, Texas 75244

**Via U.S. Mail**
WALL009, LLC
13901 Midway Road, Suite 102
Dallas, Texas 75244

**Via U.S. Mail**
WALL010, LLC
13901 Midway Road, Suite 102
Dallas, Texas 75244

**Via U.S. Mail**
WALL011, LLC
13901 Midway Road, Suite 102
Dallas, Texas 75244

**Via U.S. Mail**
WALL012, LLC

13901 Midway Road, Suite 102
Dallas, Texas 75244

**Via U.S. Mail**
WALL016, LLC
13901 Midway Road, Suite 102
Dallas, Texas 75244

**Via U.S. Mail**
WALL017, LLC
13901 Midway Road, Suite 102
Dallas, Texas 75244

**Via ECF**
Khudabuksh K. Walji, Esquire
Law Office of K. Walji
10701 Corporate Drive, Suite 350
Stafford, Texas 77477

**Via ECF**
Robert W. Buchholz, Esquire
bob@attorneybob.com

**Via ECF**
Darrell Wayne Cook, Esquire
dwcook@attorneycook.com
all@attorneycook.com

**Via ECF**
Katherine T. Hopkins, Esquire
katherine.thomas@kellyhart.com

**Via ECF**
Joyce W. Lindauer, Esquire
joyce@joycelindauer.com
dian@joycelindauer.com
gina@joycelindauer.com

**Via ECF**
Steven C. Metzger, Esquire
smetzger@pmklaw.com

**Via ECF**
Michael P. Ridulfo, Esquire
mridulfo@krcl.com
dtrevino@krcl.com

mridulfo@ecf.courtdrive.com

**Via ECF**
Patrick D. Sullivan, Esquire
sullivan@hooverslovacek.com

**Via ECF**
United States Trustee
ustpregion06.da.ecf@usdoj.gov

**Via ECF**
Behrooz P. Vida, Esquire
filings@vidalawfirm.com
legalprokirstin@gmail.com
bkfilings@yahoo.com

Dated: February 9, 2021

/s/ *Brian M. Gargano*
Brian M. Gargano